IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.                                    Case No. 4:18-cr-00016-01 KGB

MACHITA DECOSTA MITCHELL, JR.                                                       DEFENDANT

ORDER

On July 24, 2020, this Court conducted an initial sentencing hearing in this matter (Dkt. Nos. 70-72).  Prior to that hearing, the United States filed a sentencing memorandum requesting that the Court impose a sentence of 327 months of imprisonment with respect to defendant Machita Decosta Mitchell, Jr. (Dkt. No. 66).  Mr. Mitchell responded, opposing the United States' request and instead seeking a sentence of 120 months of imprisonment (Dkt. No. 68).  For the following reasons, the Court rules as follows:  (1) the Court overrules the United States' objection to the Presentence Report ("PSR") and determines that the career offender designation does not apply to Mr. Mitchell, and (2) the Court grants the United States' motion for upward variance and, pending further argument from counsel in this matter, considers at this time that the appropriate range for sentencing on count three is 90 to 120 months to run consecutive to the sentence imposed on count one.  A second sentencing hearing is set in this matter for May 27, 2021 (Dkt. No. 75).  The Court will hear from counsel at that time and will make a final determination as to sentencing.

   I.   **Background**

        A.   **Events In Federal Court Related To Current Charge**

On January 9, 2018, Mr. Mitchell also known as "Frog," and Kenwan Sherrod, also known as "Booman," were charged by indictment in this Court as follows:  (1) in count one both defendants were charged with conspiracy knowingly and intentionally to possess with intent to

distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 846; (2) in count two both defendants were charged with knowingly and intentionally possessing with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); (3) in count three both defendants were charged with aiding and abetting one another in knowingly and intentionally possessing at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 2; and (4) in count four Mr. Mitchell was charged with being a felon in possession of a firearm in and affecting commerce in violation of 18 U.S.C. § 922(g)(1) (Dkt. No. 3).  The indictment included several forfeiture allegations (*Id.*).

On October 16, 2019, Mr. Mitchell pled guilty to count one charging conspiracy knowingly and intentionally to possess with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 846 and count three charging aiding and abetting in knowingly and intentionally possessing at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), referencing the crime charged in count two of the indictment charging knowingly and intentionally possessing with intent to distribute less than 50 kilograms of marijuana (Dkt. No. 51).  In exchange, the United States dismissed the remaining counts against Mr. Mitchell (*Id.*, at 1).  At the time of the plea hearing, Mr. Mitchell was advised that the maximum potential penalty for the charge in count one was not more than five years of imprisonment, a fine of not more than $250,000, not less than two years of supervised release, and a $100 special assessment (*Id.*, at 2).  He was advised that the maximum potential penalty for the charge set forth in count three is not less than five years of imprisonment and not more than life imprisonment to run consecutive, a fine of not more than $250,000, not more than five years of supervised release, and a $100 special assessment (*Id.*).

The United States Probation Office prepared a written PSR to assist in sentencing. Based upon calculations in the PSR, if Mr. Mitchell does not qualify as a career offender, his total offense level is 21, if the United States opts to move to award a third-point reduction for acceptance of responsibility, and his total criminal history score is 16 with a criminal history category of VI. Based upon this, the Court anticipates and calculates that the guideline term of imprisonment on count one is 84 to 105 months of imprisonment, but the statutory maximum sentence is five years of imprisonment on count one. United States Sentencing Guideline ("USSG") § 5G1.2(b). Therefore, the guideline term of imprisonment for count one is 60 months. Further, with respect to count three, 18 U.S.C. § 924(c) requires that, at a minimum, the mandatory minimum sentence of 60 months of imprisonment run consecutive to the sentence imposed on count one. Under the statute, for count three, the minimum term of imprisonment is 60 months and the maximum term is life. 18 U.S.C. § 924(c)(1)(A).

The parties filed written memoranda regarding sentencing matters (Dkt. Nos. 66-68). The Court conducted a sentencing hearing at which testimony and exhibits were presented (Dkt. Nos. 70-72).

### B.     History Of Arrest On Current Charge And Additional Events

#### 1.     February 2016 Events

In February 2016, Mr. Mitchell was accused of making threats to kill and brandishing a firearm with regard to Tyrone Nutt, also known as "Tonshe," and Loretta Threadgill. The United States submitted to the Court the case file, including the case report, sworn affidavit of arrest dated February 24, 2016, and transcribed statements of Mr. Nutt and Ms. Threadgill (Dkt. No. 66-6). At the first sentencing hearing in this matter, the United States presented the testimony of Little Rock

Police Department Detective Michael McVeay, who was subject to cross examination by counsel for Mr. Mitchell.

Based upon Detective McVeay's testimony, in February 2016, Mr. Mitchell and Chris Alexander, also known as "Murda" and "Murder,"[1] were accused of threatening Mr. Nutt, Ms. Threadgill, and their family over allegations that certain of Mr. Nutt's family members allegedly stole cash and marijuana.  Detective McVeay testified that law enforcement understood from its investigations that Mr. Mitchell and Mr. Alexander were members of the same gang, allegedly engaged in a conspiracy to distribute marijuana, and had a falling out with one another at some point.

Mr. Mitchell was charged in Little Rock District Court and arrested for the offense against Mr. Nutt and Ms. Threadgill.  While in custody, Mr. Mitchell's jail phone calls were monitored; he was informed of this practice in advance.  The United States provided to the Court copies of the audio recordings of these jail calls (Dkt. No. 67; Gov't Ex. 8A).  Mr. Mitchell engaged in phone calls with his wife, father, and an associate planning and directing Mr. Nutt and Ms. Threadgill to drop their complaints against him in exchange for monetary payment.  In fact, Mr. Mitchell discusses that his wife will pick up Mr. Nutt and Ms. Threadgill and take them to the authorities so that Mr. Nutt and Ms. Threadgill can formally drop their complaints against Mr. Mitchell.  Mr. Mitchell also discusses the payment to Mr. Nutt and Ms. Threadgill in exchange for this.  The Court has reviewed Mr. Mitchell's statements during the jail calls.  Detective McVeay testified as to these jail calls.  This conduct is summarized in the PSR (PSR, ¶ 48).

---

[1] Mr. Alexander was charged separately for certain offenses, pled guilty, and was sentenced to 120 months of imprisonment. *See United States v. Chris L. Alexander*, 4:18-cr-00087 DPM.

4

### 2.     June 2017 Events Giving Rise To Federal Indictment

On June 13, 2017, while Mr. Mitchell was on Arkansas state supervision, his home was searched (PSR, ¶¶ 6-7). Authorities proceeded on an Arkansas state supervision search waiver on file but then obtained a warrant for the search. Authorities located marijuana and firearms in the home. Initially, Mr. Mitchell was arrested by state authorities, charged, and detained but then released on bond on June 16, 2017. The Arkansas state charges were *nolle prossed* as a result of this federal prosecution, as set forth in the PSR (PSR, ¶ 46). These events provide the basis for the charges to which Mr. Mitchell pled guilty in this case.

During jail phone calls during this period of incarceration, Mr. Mitchell discussed with associates his marijuana distribution activities (PSR, ¶ 8).

### 3.     July 2017 Ultra Power Lounge Events

On or about July 1, 2017, Mr. Mitchell was on the scene of the Ultra Power Lounge shooting. Mr. Mitchell was arrested again on July 5, 2017, for his alleged involvement in this event. As a result of these events on July 1, 2017, Tyler Jackson was charged in Pulaski County, Arkansas, state court, pled guilty, and received a sentence of imprisonment of 96 months (Dkt. No. 66-3). Mr. Jackson provided a recorded statement to investigators regarding the incident, a copy of which has been provided by the United States to the Court (Dkt. No. 67).[2] Further, Detective McVeay testified as to these matters at Mr. Mitchell's initial sentencing hearing. According to Mr. Jackson, he accompanied Mr. Mitchell, Mr. Sherrod, and others to the Ultra

---

[2] According to counsel for the government at the first sentencing hearing, the government attempted to confer by telephone or in-person with Mr. Jackson and to make him available during the first sentencing hearing for cross examination by counsel for Mr. Mitchell, but the government was unable to confer with or to make Mr. Jackson available due to COVID-19 quarantine restrictions at the facility housing Mr. Jackson. As a result, the government provided to the Court Mr. Jackson's previously recorded statement about these events.

Power Lounge the evening of July 1, 2017. Mr. Jackson stated that he did not bring a firearm with him but that others with whom he was travelling had firearms with them that night when entering the Ultra Power Lounge. Mr. Jackson alleged that Mr. Mitchell gave to Mr. Jackson a firearm for Mr. Jackson's use that night, with the understanding that there were individuals in the Ultra Power Lounge that Mr. Jackson's group did not like. Mr. Jackson further alleged that Mr. Mitchell verbally encouraged Mr. Jackson to shoot at individuals at the Ultra Power Lounge.

### 4. July 2017 Green Mountain Drive Events

On or about July 24, 2017, Mr. Mitchell is heard on a jail phone call discussing with an associate a plan to have two other associates, Tyler Jackson and Kenterrioun Chandler, visit Chris Alexander's apartment on Green Mountain Drive in regard to marijuana believed to be located at the apartment. During the conversation, in pertinent part, the following exchange occurs between Mr. Mitchell and an associate identified here as "unknown" but believed to be Mr. Sherrod:

> Unknown: He ain't got nobody but that a little uh that little bad ass and that motherfucker.
>
> Mitchell: Huh?
>
> Unknown: He ain't got nobody but that his bad ass son in that motherfucker.
>
> Mitchell: (Minor's name)?
>
> Unknown: Yeah. Hell yeah I just left from out there, Man nigga. So I don't know I don't want to just hit him like, hey, dude say he know this one nigga the whole thang. And goddamn he, see what he say and if be talking about wait till he get back or something I'm just gonna let dude run up in there. Shit get that and be fuck it.
>
> Mitchell: You hear me, hell yeah run up in that motherfucker snatch that little nigger ass telling him nigga you better come on with it. Everything. But shit that's what I was calling to check on and shit. I'll hit you probably in the morning to see what the hell all went down.
>
> Unknown: Alright.

        Mitchell:   Okay.

(Dkt. No. 67). The Court understands this call occurred approximately two hours before events at the apartment on Green Mountain Drive.

    Mr. Mitchell is heard on another jail phone call the following day discussing with that same associate, believed to be Mr. Sherrod, what transpired. In pertinent part, the following conversation occurs:

        Unknown: Hey you see the motherfucking news nigger.

        Mitchell:   Nuh uh.

        Unknown: Boy.

        Mitchell:   What?

        Unknown: Nigger (minor's name) ass dead.

        Mitchell:   He's dead?

        Unknown: Man.

        Mitchell:   Hell no.

        Unknown: On Crip.

        Mitchell:   What?

        Unknown: Yeah no bullshit.

        Mitchell:   Trying to protect his daddy ain't he man.

        Unknown: Man I'm talking about well what, this on the news it just say shit whoever it was uh shit he let him in and that's it. He was there by his self. Well they said it wasn't no like it wasn't no break-in or nothing.

        Mitchell:   Everything was left there? It wasn't no –

        Unknown: He was there, no.

        Mitchell:   They took some shit whoever went up in there?

>Unknown: Nall, nall, hell nall.  They say it wasn't nothing took.

>Mitchell:   Hmmm.

(Dkt. No. 67; Gov't Ex. 5 and 5A).

As a result of events that occurred during that visit to the apartment on Green Mountain Drive, a 14-year old boy was killed.  There was marijuana recovered from the apartment on Green Mountain Drive.  Mr. Jackson was charged in Pulaski County, Arkansas, state court; entered a guilty plea; and received a 20-year sentence in the Arkansas Department of Correction for his involvement in the offense (Dkt. No. 66-5), and Mr. Chandler was charged in Pulaski County, Arkansas state court; entered a guilty plea; and received a 30-year sentence in the Arkansas Department of Correction for his involvement in the offense (Dkt. No. 66-4).  Mr. Mitchell faces charges of capital murder and aggravated robbery, to which he has pled not guilty and which he contests.

At the first sentencing hearing, the Court received testimony from the lead homicide detective on this case Terry McDaniel, who was subject to cross examination by Mr. Mitchell's counsel.  Mr. McDaniel testified that neither Mr. Jackson nor Mr. Chandler implicated Mr. Mitchell in these events but that other individuals associated with Mr. Jackson, Mr. Chandler, Mr. Mitchell, and Mr. Sherrod did implicate Mr. Mitchell, as well as the associate with whom Mr. Mitchell spoke in the jail calls who is believed to be Mr. Sherrod, in their statements to law enforcement.  These events and charges are described in the PSR (PSR, ¶ 49).

On January 9, 2018, Mr. Mitchell was indicted in this federal case now pending before the Court.

## II. Discussion

### A.   Career Offender Status

1.     **Overview Of Parties' Positions**

Prior to sentencing, the United States filed an objection to the PSR asserting that Mr. Mitchell qualifies as a career offender, which would result in his having a guideline range of 262 to 327 months of imprisonment, if the United States opts to move to award a third-point reduction for acceptance of responsibility at the time of sentencing.  A defendant is a career offender if:  (1) the defendant was at least 18 years old at the time of committing the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  USSG § 4B1.1.  It is undisputed that Mr. Mitchell was at least 18 when he committed the instant offense and that the instant offense is a controlled substance offense.  The United States submits that Mr. Mitchell's prior convictions for deadly conduct pursuant to Texas Penal Code Ann. § 22.05(b), under Docket Numbers F-96-468-1 and F-96-470-1, are crimes of violence and that Mr. Mitchell's prior federal conviction of conspiracy to possess with intent to distribute cocaine base under Docket Number 4:07-cr-281-02 is also a qualifying controlled substance offense for career offender application.  The United States concedes that as to the deadly conduct convictions there is conflicting case law; the United States filed a sentencing memorandum on this point (Dkt. Nos. 66-67).

In response to this objection to the PSR, the United States Probation Office agrees that Mr. Mitchell's prior controlled substance offense qualifies as a predicate offense for a career offender designation.  However, having carefully considered Mr. Mitchell's two prior Texas convictions for deadly conduct and the holding in *United States v. Perlaza-Ortiz*, 869 F.3d 375 (5th Cir. 2017), in which the Fifth Circuit Court of Appeals revisited the question of whether the Texas deadly conduct statute is divisible concluding that it is not, the United States Probation Office determined

in response to the United States' objection that the career offender designation does not apply to Mr. Mitchell. Although Mr. Mitchell does not challenge in his response to the United States' sentencing memorandum that his prior controlled substance offense qualifies as a predicate offense for a career offender designation to apply, Mr. Mitchell maintains that his two prior convictions under the Texas deadly conduct statute do not qualify and that he is not a career offender (Dkt. No. 68).

### 2. Legal Analysis

"The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, or extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." USSG § 4B1.2(a).

In determining whether Mr. Mitchell's Texas deadly conduct convictions are for crimes of violence, the Court should "look, categorically, at the generic elements of the offense, not the facts of [Mr. Mitchell's] conviction." *United States v. Doyal*, 894 F.3d 974, 975 (8th Cir. 2018). If the statute lists alternative methods of committing the offense, the Court must determine whether the statute lists alternative elements that define separate crimes and must be found by a jury or whether the statute merely "specifies various *means* of fulfilling the crime's elements." *Id.* If the statute lists alternative elements, only some of which qualify as crimes of violence, the Court describes the statute as overinclusive and divisible, and the Court applies the modified categorical approach. *See Mathis v. United States*, ⸺ U.S. ⸺, 136 S. Ct. 2243, 2253 (2016). Under this approach, the Court looks at a limited body of qualifying materials for the narrow purpose of determining

which set of elements were at issue in the prior conviction. *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (identifying qualifying materials). When a statute merely lists alternative means, however, and where at least one of those means does not qualify as a crime of violence, the statute is overinclusive but non-divisible. A prior conviction for a non-divisible but overinclusive offense is not a crime of violence. *Mathis*, 136 S. Ct. at 2256 (for such a statute, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution"); *see also United States v. Harris*, 950 F.3d 1015, 1017–18 (8th Cir. 2020).

The offenses at issue involve an incident on August 30, 1995, in Tyler, Texas, in which Mr. Mitchell was charged with "knowingly discharg[ing] a firearm at or in the direction of Carl Johnson" in Docket Number F-96-468-1 and "knowingly discharg[ing] a firearm at or in the direction of Nathan McCloud" in Docket Number F-96-470-1 (PSR, ¶¶ 32-33; Dkt. Nos. 66-1, 66-2). At the time of Mr. Mitchell's convictions in 1995, Texas defined the crime as:

> (b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:
>
>> (1) one or more individuals; or
>>
>> (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.

Tex. Penal Code §§ 22.05(b).

After *Mathis*, the Fifth Circuit Court of Appeals analyzed § 22.05(b)'s subsections and Texas law to determine that the subsections "provide 'alternative means for committing deadly conduct.'" *Perlaza-Ortiz*, 869 F.3d at 378-79 (citing Texas published and unpublished cases). In other words, the Fifth Circuit takes the position that the statute is non-divisible and overinclusive, meaning a conviction under the statute does not serve as a predicate conviction for a crime of violence for application of the career offender designation. The Fifth Circuit reaffirmed this

11

position in *United States v. Segovia-Rivas*, 716 F. App'x. 292 (5th Cir. 2018), explaining that the court now treats "a conviction under Tex. Penal Code § 22.05(b) – whatever the indictment may have charged – as outside the Guidelines definition of qualifying crimes of violence." *Id.*, at 295 (citing *Perlaza-Ortiz*, 869 F.3d at 377, 380).

The Court, having reviewed Texas state court cases involving this offense, is not persuaded by the United States' argument on this point; the Court will follow *Perlaza-Ortiz* and determine that Mr. Mitchell's Texas convictions for deadly conduct do not qualify as predicate crimes of violence for the career offender designation.

### B. Request For Upward Variance

The United States argues that, even if the Court determines that Mr. Mitchell does not qualify as a career offender, a significant variance upward is warranted, citing Mr. Mitchell's criminal history and unconvicted conduct (Dkt. No. 66, at 21-32). Mr. Mitchell disagrees (Dkt. No. 68).

With their sentencing memoranda and at the first sentencing hearing, the parties presented evidence for the Court to consider with respect to sentencing. At this stage, the Court makes findings of fact by a preponderance of the evidence. *See, e.g., United States v. Bah,* 439 F.3d 423, 426 n. 1 (8th Cir.2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."); *see also United States v. Bastian*, 650 F. Supp. 2d 849, 856–57 (N.D. Iowa 2009), *aff'd*, 603 F.3d 460 (8th Cir. 2010). The Court considers a wide variety of evidence to arrive at a sentence, including undisputed portions of the PSR and testimony and other evidence the parties introduced and may introduce at the sentencing hearings. The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed, and even acquitted conduct at sentencing. *See,*

*e.g., United States v. Whiting,* 522 F.3d 845, 850 (8th Cir. 2008); *see also Bastian*, 650 F. Supp. 2d at 856–57.

### 1.     Ruling On Objections

Prior to making findings of fact with respect to sentencing, the Court addresses Mr. Mitchell's objections to evidence offered by the United States at the first sentencing hearing.

#### a.     Hearsay Objection

Mr. Mitchell lodges an objection to hearsay.  When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the Court may credit hearsay at the sentencing phase.  *United States v. Sharpfish,* 408 F.3d 507, 511 (8th Cir. 2005).  "'Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.'"  *United States v. Schlosser,* 558 F.3d 736, 740 (8th Cir. 2009) (quoting *United States v. Hansel,* 524 F.3d 841, 847 (8th Cir. 2008)).  Statements by Mr. Mitchell in recorded jail calls are not hearsay; they are admissions by a party opponent.  To the extent the Court intends to rely on hearsay to support a factual finding pertinent to sentencing, the Court will make specific findings about the indicia of reliability to support the conclusion that the hearsay is probably accurate.

#### b.     The Confrontation Clause Objection

Mr. Mitchell lodges a second objection based on the confrontation clause.  "The Eighth Circuit Court of Appeals has repeatedly held—before and after *Crawford* [*v. Washington,* 541 U.S. 36 (2004)]—that the Confrontation Clause does not apply at sentencing."  *United States v. Bentley,* 492 F. Supp. 2d 1050, 1055 (N.D. Iowa 2007) (Reade, C. J.), *aff'd,* 561 F.3d 803 (8th Cir. 2009), *cert. denied,* 558 U.S. 865 (2009).

#### c.     Due Process Objection

Mr. Mitchell lodges a third objection to the proceeding based on the due process clause. The Eighth Circuit has determined that "[i]ncreasing a defendant's sentence based on facts found by a judge by a preponderance of the evidence 'violate[s a defendant's] rights only if the sentence exceed[s] the statutory maximum.'" *United States v. LeBeau*, 867 F.3d 960, 978 (8th Cir. 2017) (quoting and citing *United States v. Campbell*, 764 F.3d 880, 893 (8th Cir. 2014); *United States v. Villareal-Amarillas*, 562 F.3d 892, 898 (8th Cir. 2009)). Here, the Court considers whether to vary with respect to Mr. Mitchell's sentence on count three. With respect to count three, 18 U.S.C. § 924(c) requires that, at a minimum, the mandatory minimum sentence of 60 months of imprisonment run consecutive to the sentence imposed on count one. Under the statute, for count three, the minimum term of imprisonment is 60 months and the maximum term is life. 18 U.S.C. § 924(c)(1)(A). The Court does not intend to impose a sentence that exceeds the statutory maximum on count three.

### 2. 18 U.S.C. § 3553(a) Factors

In pertinent part, 18 U.S.C. § 3553(a) directs the Court to consider the following factors in determining the particular sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

14

> (4) the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]
>
> (5) any pertinent policy statement [. . .] issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above.  *Id.*  However, the Court need not explicitly set forth its analysis of all the § 3553(a) factors.  *See, e.g., United States v. Lamoreaux,* 422 F.3d 750, 756 (8th Cir. 2005) (quoting *United States v. Crosby,* 397 F.3d 103, 113 (2d Cir. 2005)) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.").

### 3.  Analysis

The Court makes the following findings of fact:

i.  Mr. Mitchell's criminal conduct spans three decades and is moving into a fourth decade.  Mr. Mitchell shows few signs of rehabilitation despite multiple convictions, sentences, and opportunities for treatment and counseling (PSR, ¶¶ 57-58).

ii.  Mr. Mitchell has a criminal history that includes repeated violent conduct that spans a long period of time (PSR, ¶¶ 28, 29, 32, 33, 36; *see also* ¶¶ 43, 44, 48, 49).

iii.  Mr. Mitchell has a criminal history that includes prior convictions for firearm offenses, despite being a long-time felon who is not permitted to possess firearms (PSR, ¶¶ 30, 31, 35, 38; *see also* ¶ 46).

    iv.       The United States has demonstrated by a preponderance of the evidence that, while being held in the Pulaski County Jail, Mr. Mitchell engaged in conduct to bribe a witness or witnesses in a then-pending criminal case against him in an effort to dispose of that case.  The Court reaches this conclusion based on Mr. Mitchell's own statements during the jail calls.  This demonstrates a disregard for the law.

    v.       Mr. Mitchell, despite repeatedly being convicted and sentenced for prior offenses, continues to engage in illegal conduct, including illegal conduct while incarcerated on pending charges and while on supervision for prior offenses.  The Court reaches this conclusion based on Mr. Mitchell's own statements during the jail calls and based on the nature and circumstances of the instant offense of conviction.  This demonstrates a disregard for the law and a likelihood to reoffend.

    vi.       Mr. Mitchell admits in this case to possessing firearms and controlled substances simultaneously.  This conduct poses a risk to Mr. Mitchell and to all of those around Mr. Mitchell, including to society generally.

    vii.       Mr. Mitchell admits in this case to being a drug dealer, and the United States has demonstrated by a preponderance of the evidence that Mr. Mitchell is not a low-level drug dealer but instead is a high-ranking, repeat drug dealing offender.  The Court reaches this conclusion based on Mr. Mitchell's own statements during the jail calls and Mr. Mitchell's criminal history (PSR, ¶¶ 37, 39, 46).

    viii.       Mr. Mitchell knowingly permits and encourages others to engage in illegal conduct for his benefit.  The Court reaches this conclusion based on Mr. Mitchell's own statements regarding the witness bribery allegations and the events to occur at the Green Mountain Drive apartment.

      ix.        Mr. Mitchell describes a lack of youthful guidance based on his upbringing, having been provided little guidance by his father and having joined a gang at the age of 12 to which he admits he still belongs (PSR, ¶¶ 53, 54).

      x.        Mr. Mitchell describes traumatic events he experienced, including the death of his brother (PSR, ¶ 53).

      xi.        Mr. Mitchell has suffered from mental health challenges and drug addiction (PSR, ¶¶ 57, 58).

The Court considers the § 3553(a) factors and concludes the statutory maximum of 60 months on count one and an upward variance to a range of 90 to 120 months on count three, to run consecutive to the term imposed on count one, is appropriate. Mr. Mitchell's history and characteristics merit a lengthy sentence. A second sentencing hearing is set in this matter for May 27, 2021 (Dkt. No. 75). The Court will hear from counsel at that time and will make a final determination as to sentencing.

So ordered this 18th day of May 2021.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge